Thank you. Kate Gordon for Appellant Connie Nagrampa. This case centers on an arbitration clause requiring Connie Nagrampa, who is a one-woman franchisee, to fly 3,000 miles and pay over $6,000 to defend herself in arbitration against a national franchise company. The combination of that distance and those costs effectively prevented Ms. Nagrampa from accessing arbitration at all and from defending herself against Mailcoups' claims. The clause therefore worked to insulate Mailcoups from any of Ms. Nagrampa's claims and acted as an exculpatory clause, which is contrary to the public policy of the State and flatly unconscionable under California law. What did it exculpate? What the clause effectively did was No, no. It didn't exculpate anything. That's argument. What it did was demand an arbitration, at which point the issues could be arbitrated, right? The clause didn't exculpatory clauses are, if I hit you, you cannot sue me. That's an exculpatory clause, right? The arbitration clause required arbitration in Mailcoups' backyard in Boston. That's different. And my argument is that it acted as an exculpatory clause. It acted to insulate Mailcoups. It's similar to the California case. You're better off talking about unconscionability than exculpatory clauses, I think. Yes. Yes. My question is, was this issue referred to the arbitrator at all? The issue of the unconscionability? Unconscionability. The issue of unconscionability was referred to the arbitrator in that Ms. Nagrampa filed an objection to venue at the very beginning of this, of the arbitration process, in which she said that she contested the validity of the clause. But under California law, the unconscionability issue is for the court and not the arbitrator. The arbitrator never decided on that issue. But doesn't it have to be referred to him first for a ruling and then it comes to court? No. The issue of whether the clause is valid in the first instance is actually an issue for the court and not the arbitrator. Under California law, this court said as much in the Ninth Circuit case Ting v. AT&T and also Tickner v. Choice Hotels, where the court said unconscionability analysis under the Supreme Court case of Doctors Associates goes in the first instance to the court and not the arbitrator. It is an issue for the court. Now, what does Prima Paint tell us? Prima Paint tells us that a challenge to the contract as a whole goes to the arbitrator and not to the court. But a more recent Supreme Court case, Howsam v. Dean Witter, reserves gateway questions of arbitrability for the arbitrator. And unconscionability has been determined by the Supreme Court to be one of those gateway questions. It's under Section 2 of the Federal Arbitration Act. It's an issue that can void the entire arbitration clause. So what the court has decided is that unconscionability goes to the clause, not the contract. Prima Paint says a challenge to the contract goes to the arbitrator. It's a little bit of a difficult parsing. That gets to be a rather esoteric distinction, does it not? It is an esoteric distinction. It's been a difficult distinction for many courts after Prima Paint. But Howsam, I think, clarifies with its language of gateway question that these questions that go to whether there's even an arbitration clause that's valid are for the court. But wait a minute. Prima Paint says that where the charge of the defense to the arbitration clause in the contract is one of procedural unconscionability, it's a contract of adhesion, it was entered into without negotiation, without the possibility of negotiation, all those things that we've come to love in the area of contracts of adhesion. That goes to the arbitrator, right? Prima Paint does not say that procedural unconscionability goes to the arbitrator. Prima Paint says challenges to the entire contract, such as a challenge that the contract was entered into because of fraud, are for the arbitrator. This Court in Tickner... Procedural unconscionability is a challenge to the entering into the whole contract as a whole. It is, but this Court in Tickner and other courts have made the distinction that because procedural unconscionability is central to the unconscionability analysis, that question goes to the making of the clause and the unconscionability of the clause. This question actually came up specifically in this court's Tickner case. And this court said procedural unconscionability is an issue for the court. This contract is procedurally unconscionable, as we allege in our briefs. The Mail Coups has made an argument that a contract between a franchisee and a franchisor cannot be procedurally unconscionable because of the supposed sophistication of the franchisee. We would respectfully disagree with that and say that in, again, Tickner, this Court's case, in that case, the dissent made a point  that he had a number of hotels that he had been running franchises on and signed contracts on, and the Court still said, this is an adhesion contract. The contract is a contract where one party has superior bargaining power and therefore it's adhesive. And it was a non-negotiable contract. Do you always have a contract of adhesion if one party is a big corporation and the other party is an individual? So long as there's no opportunity to negotiate and it's a take-it-or-leave-it contract, yes, if there's unequal bargaining power. Under this Court, Circuit City v. Adams case, that is the question. Well, then there could never be an arbitration clause in a Fortune 500 company entering into a contract with an individual if they say, look, we want all the we want this arbitration clause. Procedural unconscionability is just one side of the equation in California. The other side is substantive unconscionability. A clause can't be thrown out merely for procedural unconscionability reasons. There also must be one-sided or oppressive terms in the clause. And in this case, we have three such terms. We have the venue provision requiring arbitration in Boston, which is where Milcoops is located. We have the cost provision requiring a split of the cost, which ended up meaning about a $6,500 fee, $6,400 fee for Mr. Grampa to even get into the forum. And then we have the fact that the clause unilaterally chose one arbitration provider, the American Arbitration Association, instead of giving a choice between arbitration providers. What that did was set up a structurally biased situation. All right. Let me ask this. Insofar as the AAA side, one second. The fact that Massachusetts was charged, was determined as the venue, if we agree with you, can't we just sever that out of the agreement? We can't in this case because we have the two other substantive unconscionability problems. If this Court were to say, okay, we'll sever the venue clause, the cost clause, and we'll require the contract to give a choice. Just the forum clause. Because you put nothing in that impressed me that the American Arbitration Association is a biased organization. As a matter of fact, it's pretty well known that they do a tremendous amount of arbitration. They do. And let me clarify that that argument is not to the actual bias demonstrated by either the association or arbitrator, but to the fact that the AAA is unilaterally chosen by mail coups. The AAA then unilaterally chooses a panel of arbitrators from which the parties choose their arbitrator. That is where the case is similar to the Haas case. But to answer your other question. Just to stay with what you have, you have that shown by that reason of the fact that the AAA is going to be a biased organization in this case. In Haas, the Supreme Court lays out that we do not have to show that there's an actual bias in the case. What we can show is that the structure of the unilateral choosing of the people to hear the case sets up an incentive to bias. Basically, AAA is chosen by mail coups in its forum contract. There's no negotiation possible. Every one of its further forum contracts chooses AAA. What we say is, like Haas, this gives AAA an incentive to choose a biased panel from which the sides can choose their arbitrator. Are there any showing, any possible showing to that effect? Again, the California Supreme Court has not, and neither has the United States Supreme Court, required a showing of actual bias. We did submit in our answer to AAA's request for judicial notice evidence submitted in the Randolph case in the Supreme Court of a AAA panel, for instance, in an insurance case against an insurer, where every single one of the people chosen on the panel was either a lawyer for an insurance company or was working for an insurance company. So there's evidence in other cases. Well, that's objecting to the panel. That's another story for another case. We're not dealing with that in this case. All right. And the other reason you say that... The other reason, to go back to your severability question, is that our argument about venue is combined with our argument about cost. We allege that the combination of venue and cost prevented her accessing the forum. You could not change the cost provision without having to rewrite the contract, which is... Well, why is that a contract of adhesion? If this went into litigation in State or Federal court, both sides would be paying lawyers considerably more than I see as the filing fee in this case. We would allege that there's absolutely no way that arbitration could be less expensive than – could be less expensive than – I'm sorry. There's no way that court could cost more than arbitration here because, in court, I'm not paying each of your salaries, which I would be in arbitration. I'm not paying to rent this room. I'm not paying the cost of travel. I am paying the same costs I would pay in arbitration, which are the cost of lawyers, the cost of experts, the cost of witnesses. Most of the articles you read about say that arbitration is not only faster but cheaper. But many of the cases that we cite in our briefs say that the AAA charges unconscionably high fees and that court would, in fact, be cheaper for those people. Counsel, you said that there was no negotiation of this contract. Yes. Where's the evidence of that? Mel Coops has not contested that there was no negotiation and my client has alleged that there was no negotiation. There wasn't a possibility of negotiation? Was there any evidence that she said in negotiating this contract, your client, that she wished the venue to be in California rather than Boston? There is evidence of no negotiation on either side in the signing of the contract as soon as they allege arbitration. My question was, did she attempt to say, I know this is your form contract, but I would like these changes made? There's no evidence in the record of negotiation. Then why do you say there was no negotiation? Mel Coops has never we have alleged in our filings in the trial court that there was no negotiation. Mel Coops has never contested that. Did you ever ask for negotiation? Did your client ask for negotiation before she signed the agreement? I don't believe so, but I don't know. Well, then why say that there's, why is that even an issue if there's no negotiation when your client didn't ask for any? In this court's cases, such as Tang and Tickner, the issue has been only that there was a contract that was a form contract and no evidence of negotiation. The California Supreme Court, in another case, in Graham v. Scissortail, held that there was an adhesive contract with no negotiation between Bill Graham, who is a multimillionaire music producer, and a contract he signed with a musician's union. The court went extensively into this issue and said this is a form contract. The union always uses this contract. There are blank spaces for names, just as in our contract. And even though Bill Graham is a multimillionaire who does this all the time, this is an adhesive contract. Counsel, our questions took you way over time. Thank you very much. Counsel for the other side? Can I have any time for rebuttal? No, I'm sorry. That's all right. Thank you, Your Honor. Thank you. Thank you. Glenn Platner representing Appelli Mail Coops. And before I start what was going to be my presentation, let me answer some of the questions that the panel asked. Specifically on the issue of negotiation, there was no evidence presented by Mr. Grumpa on that issue, so we didn't present any evidence countering it. It's our position that the contract was not negotiated, but given that she didn't ask for negotiation, there would be no evidence either way as to what would have happened had she said, I will agree to this, but only if arbitration is in California, or if she had asked for any other change. And what I would submit is based on the evidence that is in the record, there's a very good likelihood that she could have negotiated based upon the fact that she was a sought-after franchisee. She was in the industry, this is from her own declaration, in the industry working for a competitor making over $100,000 a year, and we called her. We, according to her declaration, repeatedly contacted her to attempt to get her to become a franchisee. So this is totally distinguishable from the contract of adhesion cases where it's take it or leave it and the person has no other options. I was going to say, what about Prima Payne? How do you look at Prima Payne? Well, I think if we cited the Arriaga case, and I think Prima Payne also supports it, that the issue should first be addressed to the arbitrator, and I was just about to answer that other question that you asked, which was the issue of arbitrability in this case was never referenced to the arbitrator or the AAA. While she did early on, her counsel wrote a letter saying, you know, we think the venue should be elsewhere in our case, and there's a distinction, by the way, between the case Mail Coops filed for arbitration, which is not before this panel, and her affirmative complaint, which is what the district court ruled on. In her affirmative complaint, she never challenged the issue of arbitration. She actually filed her complaint as a cross-claim in the arbitration and then halfway through the fee waiver process decided to abandon it because the fee waiver had not been granted, nor had it been denied because she never completed her fee waiver application, which, if we get into the costs, are fairly significant. Could you just back up? Sure. What issues do you think having Prima Payne, which was just referenced, and the other – what issues are for the arbitrator to decide and what issues are for the court to decide? I think the arbitrator should be deciding initially whether the case, whether it's a contract that is unconscionable and should or should not be arbitrated. Procedurally and substantively or just – or what? I would say certainly procedurally. And how about the substantive unconscionability? I think there are – Which is the contract of – all right. Yeah. I mean, there are a number of cases where courts do decide that. But I think in this case, she doesn't hit either of them. Well, are you conceding that the arbitrator could not determine the issue of substantive unconscionability? Because if that were so, then under the law of California, the arbitrator could not determine unconscionability. No, I'm not conceding that. In this case, it didn't happen, so we don't know. I mean, it's our position, which we put in the brief based on Arriaga, that the issue should have gone first to the arbitrator, and it did not. But it's also our position that they come nowhere close to meeting it under any standard, regardless of who does it. Now, that's a various determination. Is it your position that both substantive and procedural unconscionability should be decided in the first instance by the arbitrator or that one of those is reserved for our court if there's an award for you and there's an objection by her coming into saying the award should not be allowed? I think she should have raised both issues first with the arbitrator, and she did not. Now, what's your response to her argument that under Tichenor, one of our cases, that PREMA is limited only to a challenge to the entire contract as opposed to a specific clause? I think Tichenor, which was decided under Montana law by the Ninth Circuit, the court did rule on the issues of procedural and substantive unconscionability. So I think it does support her position. Well, where does that leave you? Well, it leaves us with Arriaga and the other cases we cited. So hold that what? Finish the thought. That hold that the issue should have first been raised with the arbitrator. Well, I'm really at sea here. If it can be raised by us in the first instance, then they're going to claim the contract is unconscionable or it's a contract of adhesion or whatever. It would never go to an arbitrator. Is it your position that all issues, including unconscionability, go to the arbitrator in the first instance and that we have a second bite at that apple? That's the position we've taken. And in reviewing the arbitrator's award, how do we review it? Whether there was substantial evidence for the arbitrator to determine that there was or was not unconscionability? Is that your position? Yes. If we review it on the first instance, it's a different stand. We would actually make the merits determination and not view it as an appellate type of procedure of substantial evidence. Well, we've primarily argued it on the merits, but it never got to the arbitrator. Well, I know that, but that's why I'm confused here as to what your position is. Your position, as I understand, is that the whole kit and caboodle goes to the arbitrator. Any defense she has to this, including unconscionability, whether it be substantive or procedural or any other defenses, that's your position. Is that correct? Right. And then your position is after the award, if she doesn't pay the award, if you win, and you come in to enforce the award, that we review what the arbitrator has done under the Federal Arbitration Act and determine whether there was substantial evidence for the arbitrator to make the award. Correct. Okay. I understand your position. Is this essentially kind of an exhaustion concept? What's going on here? Why are we going through this rigmarole? Well, we didn't in this case, but I don't think that's intellectual. Yeah. I understand. Rigmarole. I don't think it mattered how we did it in this case, but in our petition to compel arbitration, since that was before the court, in that instance, the court was able to determine it. And the court didn't, you know, we didn't even argue that, I mean, actually we did argue, but the court didn't rule based on the fact that the arbitrator should have decided. So the district court, this had really nothing to do with the district court's decision that were challenging. What's wrong with her position is this. Her position is this contract is founded in fraud. Well, there's a defense to the contract, unconscionability, just as you can have a defense of founded in fraud. I didn't sign it. It was a fraudulent. So she says before it goes to the arbitrator, we determine whether or not this is an arbitrable agreement, whether this agreement is an agreement that should not be respected, countenanced. And she says at the very least, we should determine substantive unconscionability, if not other issues. And if we determine that it's not unconscionable, then we send it to the arbitrator. Well, that's what the district court did. I mean, the district court determined that, ruled in our favor, and did so correctly. Well, yeah, and well, but before us, she says that the district court, as a matter of law, made the wrong decision based on factors that it was a contract of adhesion. And we can review that. Well, there's two elements to it. I mean, the contract of adhesion element I spoke about, if they didn't establish it was a take-it-or-leave-it contract with a person who didn't have choice, but even if they did establish that, you then look at the other element, substantive unconscionability, and you have to determine, was this an agreement that shocked the conscience? It was so one-sided that it's shocking. And there's nothing about it that's shocking. It's a standard commercial arbitration agreement, which doesn't limit any remedies, and there's nothing at all that's shocking. Well, it's shocking that you have to go 3,000 miles to an arbitration proceeding when you can go next door to a courthouse in your own vicinage. I don't think that's shocking. That was something that the parties agreed at the beginning of the contract, in a commercial relationship, and there's legions of cases that support that. Well, she argues that it was a take-it-or-leave-it situation. Without evidence. An agreement. Without any evidence, though. But she says that, but there's no evidence of that. She didn't. The only evidence is Mr. Grumpet did not attempt to negotiate. So there's no evidence it was take-it-or-leave-it. And as I stated in the opening remarks, given that we were seeking her, that we were repeatedly going after her, there's an inference that perhaps she could have negotiated, but we don't know because she didn't attempt to. Counsel, I remember one of the last things that opposing counsel said was that the issue whether there was an attempt to negotiate was never contested by you. Is that correct? It was never contested because there was no evidence presented on it. But there was an allegation that this was a nonnegotiable contract, which allegation was not traversed by a denial? It was not denied. We pointed out that there was no evidence of an attempt to negotiate. No, no, no. As a matter of pleading, if an allegation is made and is not denied, either generally or especially, then it's admitted, isn't it? We didn't get to the admission or denial point. This case was decided on a motion to dismiss prior to any answer. Well, but there was also a complaint that was joined, an attempt to get a temporary and permanent injunction against the arbitration, right? No, there was no attempt. There was a cause of action in the complaint, but they never sought to pursue that cause of action. They never filed for an injunction. You made a motion to compel arbitration and dismiss or stay plaintiff's action? Correct. You never answered their complaint? Correct. Oh, all right. That's what I wanted to know. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And we will now hear oral argument in Castillo v. McDaniel. Counsel, you may proceed. Thank you. Good morning. My name is Ann.
judges: O'scannlain, Cowen, Bea